THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

PECOLIA DIGGS
        Plaintiff        *
                                     *
VS.                                  *
                                     *
CITY OF OSCEOLA          *          NO: 3:05CV00261 SWW
                                     *
        Defendant      *
                                     *
                                     *

## ORDER

This is an employment discrimination case. Plaintiff Pecolia Diggs ("Diggs"), proceeding *pro se,* sues the City of Osceola under Title VII of the 1964 Civil Rights Act, as amended by the Civil Rights Act of 1991. Diggs, who is black, claims that the City discriminated against her by treating her less favorably than white employees and by terminating her employment based on her race. Diggs also claims that the City retaliated against her for filing a discrimination charge. Before the Court is the City's motion for summary judgment (docket entries #80, #81, #82) and Diggs' response (docket entry #87). After careful consideration, and for the reasons that follow, the motion for summary judgment will be granted.

I.

The following facts are undisputed.[1] On February 24, 2004, Diggs was hired to work as a dispatcher and a jail matron at the Osceola Police Department ("Department"). On December

---

[1]Pursuant to Local Rule 56.1(c), all material facts set forth in Defendant's statement of uncontested material facts (docket entry #81) are deemed admitted unless controverted by Plaintiff.

21, 2004, Diggs filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging disparate treatment based on race. *See* docket entry #2, attachment.

On February 26, 2005, Diggs' supervisor, David Gladden ("Gladden") disciplined Diggs by way of written notice for three employment violations: (1) absence from work without approval on January 15, 2005; (2) failing to perform employment duties on January 24, 2005; and (3) leaving work without permission on February 8, 2005, after misinforming a supervisor that such permission had been granted. Docket entry #81, ¶ 10; docket entry #80-3, ¶¶ 17-20. Gladden informed Diggs that future violations would result in her immediate termination. Docket entry #80-3, ¶ 21. Later that day, Diggs and a co-worker, Rebecca Ryckman, argued. Docket entry #81, ¶ 12. Gladden determined that Diggs was primarily responsible for the altercation, and he terminated Diggs' employment. *Id*.,¶¶ 14-15.

II.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

III.

Wrongful Termination

Because Diggs presents no evidence that clearly points to the presence of an illegal motive for her termination she "must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). Under the three-stage order of proof set forth in *McDonnell Douglas*, Diggs must first establish a prima facie case of discrimination by showing (1) membership in a protected group, (2) that she met the legitimate expectations of her employer, (3) that she suffered adverse employment action, and (4) facts that permit an inference of discrimination. *Id*. If Diggs establishes a prima facie case, the City must articulate a legitimate, nondiscriminatory reason for her termination. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996). Finally, the burden shifts back to Diggs to show that the proffered reasons are pretextual and that discrimination based on race was the real reason for her termination.

The City asserts that Diggs cannot show that she met the legitimate expectations of her employer, as required to establish a prima facie case of discrimination. Additionally, the City

3

asserts that Gladden terminated Diggs' employment for legitimate, nondiscriminatory reasons: the violations for which she received written notice on February 26, 2005 and her involvement in the altercation that took place on February 26, 2005. The City contends that Diggs is unable to show that the stated reasons for her termination are pretext for race discrimination.

As evidence that she met the legitimate expectations of her employer, Diggs states that she missed work only to meet a doctor's appointment, she had no complaints from jail patrons, and she received a raise. However, Diggs' conclusory statements regarding her job performance are insufficient to overcome summary judgment. *See LaCroix v. Sears, Roebuck, & Co.*, 240 F.3d 688, 691 (8th Cir.2001) (holding that conclusory statements alone are insufficient to withstand properly supported summary judgment motion).

Even assuming that Diggs could make out a prima facie case of discrimination based on wrongful termination, the Court agrees that she has failed to show that the stated reasons for her termination are pretext for discrimination. In an effort to make the required showing, Diggs states: "I witnessed employees with seniority and employees who came after me argue with each other. They weren't terminated." Docket entry #85, at 5. Although instances of disparate treatment can support a finding of pretext, Diggs has the burden of proving that she and other employees who were not terminated for engaging in arguments were similarly situated in all relevant respects. *See E.E.O.C. v. Kohler Co.* 335 F.3d 766, 775 -776 (8th Cir. 2003)(citing *Lynn v. Deaconess Medical Ctr.-West Campus,* 160 F.3d 484, 487 (8th Cir.1998)). Additionally, to be probative evidence of pretext, the misconduct of a more leniently disciplined employee must be of comparable seriousness. *Id*. (citations omitted). Here, Diggs presents no evidence that other similarly situated employees, not members of her protected class, committed the same

4

transgressions as she and were not terminated.

Diggs points out that the State of Arkansas Board of Review reviewed her claim for unemployment benefits and found that her employment with the City was terminated for reasons other than misconduct. *See* docket entry #2, attachment. In deciding Diggs' claim for unemployment benefits, the Board found that the City failed to carry its burden to show, by a preponderance of the evidence, that Diggs was guilty of "an intentional or deliberate violation of the employer's rules; a willful or wanton disregard of the standards of behavior . . . ; or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design." *Id*. at 4. Here, however, the City is only required to articulate a legitimate, nondiscriminatory reason for Diggs' termination. It is Diggs who shoulders the burden to rebut the proffered reason and show pretext. The Court finds that the Board's decision sheds no light on the pertinent issues in this case and that Plaintiff has failed to create a genuine issue for trial regarding her termination.

Disparate Treatment

In her EEOC charge filed December 21, 2004, and her complaint filed in this case, Diggs alleges that (1) she worked 21 weekends before she received a weekend off work, but two newly-hired white dispatchers worked only six weeks before they were scheduled for a weekend off; (2) she worked every holiday in 2004, but the aforementioned white employees did not; (2) she received ACIC training[2] only after white employees received training; and (4) she waited

---

[2]Diggs does not define the acronym "ACIC," nor does she provide information about how such training affected her employment.

several weeks before receiving a full uniform.[3]

To establish discrimination based on disparate treatment, Diggs must show, among other things, that similarly situated employees that were not members of her protected class were treated differently. *See Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005). Diggs "bears the burden to proffer 'specific, tangible evidence' that employees who were 'similarly situated in all respects' to [her] received different treatment from [the City]." *Id*. (quoting *Rose-Maston v. NME Hosp., Inc.,* 133 F.3d 1104, 1109 n. 4 (8th Cir.1998) (first quote); *Gilmore v. AT&T*, 319 F.3d 1042, t 1046 (second quote)).

The City argues that Diggs has failed to make this showing, and the Court agrees. Diggs claims that "two new white dispatchers" received time off and training before she received the same, but she fails to identify or provide any specific information about the white dispatchers who received favorable treatment.

As part of her prima facie case, Diggs must also show that she suffered adverse employment action. The City maintains that Diggs' general complaints regarding working weekends and holidays, delayed training, and waiting two weeks to receive a uniform fail to allege adverse employment action. An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage, and mere inconvenience without any adverse impact on title, salary, or benefits fails to amount to adverse employment

---

[3]The City has produced evidence that when it hired Diggs in February 2004, she lived in Luxora, Arkansas, and pursuant to City policy, she had six months from her hire to move within the Osceola City limits or face termination. Docket entry #81, ¶ 4, docket entry #80-3, ¶ 6. By affidavit, Gladden testifies that he received notice on August 17, 2004 that Diggs had moved within the Osceola city limits. Docket entry #80-3, ¶ 7. Gladden states that he delayed several employment actions, including sending Diggs to ACIC training until Diggs moved to Osceola.

action. *Sallis v. University of Minn*. 408 F.3d 470, 476 (8th Cir. 2005)(citation omitted). Diggs bears the burden to show that her work schedule, delayed training, and uniform situation had a material impact on her title, salary, benefits or other material aspect of employment, and the Court agrees that she has failed to do so.[4]

Retaliation

To establish a prima facie case of retaliation, Diggs must show (1) that she participated in a statutorily protected activity, (2) that the City took an adverse employment action against her, and (3) that a causal connection exists between her protected activity and the adverse employment action. *See Smith v. Riceland Foods, Inc*., 151 F.3d 813, 818 (8th Cir. 1998). If Diggs establishes a prima facie case, the burden of production shifts to the City to articulate a legitimate, non-retaliatory reason for taking adverse employment action. If the City is successful in this regard, Diggs must present evidence that the City's proffered reasons are pretext for retaliation. *See Cross v. Cleaver*, 142 F.3d 1059, 1071 (8th Cir. 1998).

The Court finds that Diggs participated in a statutorily protected activity by filing an EEOC charge on December 21, 2004, and that the City took adverse employment action against her by terminating her employment on February 26, 2006. However, even assuming that Diggs can establish a causal connection between her protected activity and termination,[5] the Court

---

[4]Although Diggs alleges that she worked more holidays that other employees, she does not allege that she was denied time-off with pay on holidays. Additionally, the City has come forward with evidence that once Diggs complained that she had worked 16 consecutive weeks without a weekend off, she was scheduled for time off on weekends. *See* docket entry #80, Ex. 3, ¶ 9.

[5]Diggs filed her EEOC charge on December 21, 2004, and the City terminated her on February 26, 2005. Accordingly, there is a weak temporal connection between Diggs' protected activity and her termination. However, Diggs also claims that on February 26, 2006, the date of her termination, an EEOC mediator informed Gladden that she had reached an "impasse"

7

finds, for reasons previously explained, that she has failed to come forward with any evidence to suggest that the City's stated reasons for terminating her are merely pretext for retaliation.

IV.

Having determined that no genuine issues for trial exist as to each of Plaintiff's claims, the City's motion for summary judgment (docket entry #80) is GRANTED. Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 19TH DAY OF MARCH, 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

regarding Diggs' EEOC charge because the parties were unable to reach a settlement. Docket entry #2, at 2. Diggs states that soon after the mediator made this statement, Gladden asked Diggs if she intended to continue working for the City. Docket entry #85, at 5. Diggs states that she was fired "less than two weeks after the impasse." *Id*.